TYSON, Judge.
 

 *409
 
 John Berry ("Plaintiff" or "Mr. Berry") appeals from an order assigning primary physical custody of his two children to their mother, Ashleigh Berry ("Defendant" or "Ms. Berry"). Plaintiff has failed to show the trial court abused its discretion in assigning Defendant primary physical custody. We affirm the trial court's order.
 

 I. Background
 

 Mr. Berry and Ms. Berry were married 22 October 2005. They are parents of two children, C.B., born in 2008, and H.B., born in 2011. The parties separated on 28 January 2012. Mr. Berry filed a complaint on 31 January 2012, which sought temporary and permanent custody, and a motion for an
 
 ex parte
 
 temporary custody order to "maintain[ ] the status quo living arrangements" of the children throughout the hearing process. Ms. Berry had removed the children from the marital home and taken them to her parents' home. The motion for
 
 ex parte
 
 temporary custody was heard on 3 February 2012, and a temporary custody order was entered on 7 March 2012. The court granted temporary physical custody of the children to Ms. Berry, and secondary physical custody and unsupervised daytime visitation to Mr. Berry.
 

 On 21 May 2012, C.B. allegedly told Ms. Berry his father had "put an x-ray in his hiney." Ms. Berry took C.B. to the pediatrician, who found no physical indication of any abuse. Ms. Berry filed a report with Pitt County Department of Social Services ("DSS") on 25 May 2012, and DSS determined her allegations did not justify further investigation.
 

 At the temporary custody hearing on 29 May 2012, Ms. Berry presented her concerns about Mr. Berry sleeping with or staying in the same room as the children, presented allegations about Mr. Berry's pornography usage, and re-asserted her allegations concerning C.B.'s "x-ray incident." The temporary order for child custody and child support was read aloud in court and entered on 24 October 2012. This order maintained the previous custody arrangements, allowed Mr. Berry overnight visitation, but specifically decreed neither parent should sleep in the same room as the children.
 

 Mr. and Ms. Berry continued negotiations for permanent custody throughout 2012 and into 2013. A judgment granting absolute divorce between Mr. Berry and Ms. Berry was entered on 25 April 2013.
 

 Mr. Berry met his current wife, Jodie Berry ("Jodie") in January 2013. Ms. Berry became upset after Jodie was included in some of the children's activities. Custody negotiations stalled at the end of July 2013.
 

 *410
 
 Ms. Berry alleged she witnessed an incident of "sexualized behavior" between the children in the bathtub on 31 July 2013. She stated the children told her it was something "Daddy likes for them to do." On 1 August 2013, Ms. Berry met with Julie Gill of Tedi Bear Children's Advocacy Center ("TBCAC"). Ms. Gill reported their conversations to DSS on 2 August 2013, and DSS accepted the report for immediate investigation. The investigator interviewed C.B., Mr. Berry, and Ms. Berry on 2 August 2013.
 

 The DSS investigator scheduled forensic interviews and medical examinations for the children at TBCAC on 6 August 2013. Neither the interviews nor the exams revealed any inappropriate sexual contact or evidence of sexual abuse. TBCAC recommended DSS approve a Child and Family Evaluation ("CFE").
 

 The CFE was conducted between 13 September 2013 and 12 October 2013. After extensive interviews, the CFE concluded:
 

 *910
 
 (a) [C.B.] was tremendously inconsistent in his versions of events including the "x-ray allegations";
 

 ...
 

 (c) [a]lthough Ms. Berry had expressed concerns about Mr. Berry's level of attachment to [C.B.] and his prior use of pornography, Mr. Berry's level of attachment to [C.B.] was not extraordinary given the high conflict custody matter and his prior use of pornography was within normal limits;
 

 ...
 

 (e) Ms. Berry demonstrated significant issues of control during the CFE process.
 

 The CFE recommended:
 

 (a) [t]he children should be placed in therapy immediately;
 

 (b) [t]he parents no longer question the children regarding any allegations;
 

 (c) [b]oth parents attend and receive training in effective co-parenting/cooperative co-parenting from an expert and that the expert/coordinator continue to provide training; and,
 

 (d) [a] custody evaluation should be conducted.
 

 After receiving the CFE, DSS determined the abuse allegations could not be substantiated. In a letter dated 21 October 2013, DSS informed Mr. Berry and Ms. Berry of their determination, and recommended
 
 *411
 
 co-parenting training for both parents, a custody evaluation, and therapy for the children.
 

 Mr. Berry contacted Ms. Berry by email on 28 October 2013, stating his agreement with DSS' recommendations, but Ms. Berry only agreed to place C.B. in therapy. Ms. Berry met with Brooke Bleau on 25 November 2013, to seek therapy for C.B. Mr. Berry acquiesced, and C.B. began bi-weekly sessions with Ms. Bleau on 4 December 2013. Mr. Berry and Jodie, his current wife, became engaged in late December 2013.
 

 On 3 January 2014, Ms. Bleau recommended Dr. Anne Mauldin as a parenting coordinator for Mr. Berry and Ms. Berry. Mr. Berry met with Dr. Mauldin on 16 January 2014, and Dr. Mauldin conducted a phone interview with Ms. Berry on 17 January 2014. Ms. Berry indicated that if she and Mr. Berry could not agree on parenting decisions, then she would make the decisions. Mr. Berry filed a motion to appoint a parenting coordinator and a motion for a custody evaluation on 21 January 2014.
 

 Ms. Berry voluntarily agreed to engage in limited parenting coordination. After two months, Dr. Mauldin indicated the parties had not reached an agreement about Mr. Berry's upcoming wedding weekend, but remained open to further sessions, if either party identified co-parenting issues.
 

 Ms. Berry did not raise any allegations of sexual abuse with Ms. Bleau from point of intake until 4 February 2014. At that session, and every session thereafter, Ms. Berry expressed concerns about alleged inappropriate sexual contact between C.B. and Mr. Berry during Mr. Berry's custodial visits. Ms. Bleau informed Ms. Berry on 27 March 2014 that she would not make a report to DSS absent a complaint from C.B. At the next weekly session, C.B. told Ms. Bleau his father had touched his private parts. On 23 April 2014, Ms. Bleau initiated contact with DSS concerning the allegations of sexual abuse. No report was filed due to lack of information.
 

 Mr. Berry's motions for a parenting coordinator and a custody evaluation were heard on 15 May 2014. Ms. Bleau testified that in her opinion, C.B. felt safe and stable in Mr. Berry's home, and he did not exhibit any indicators attributable to abuse. The trial court found "it was unlikely that either child was being sexually abused by Mr. Berry." The trial court allowed the motion for custody evaluation, but left the existing custody order in place.
 

 On 21 May 2014, Ms. Berry expressed her dissatisfaction with Ms. Bleau. Ms. Berry continued to raise concerns of inappropriate sexual
 
 *412
 
 contact occurring during visits with Mr. Berry. C.B. told Ms. Bleau his father was "no longer touching his butt, just touching his peepee." Ms. Bleau made a report to DSS on 17 July 2014. DSS indicated it would not accept the report on 22 July 2014.
 

 Ms. Berry sent a letter to Ms. Bleau on 6 August 2014, discontinuing therapy services.
 

 *911
 
 Ms. Berry did not find or agree to another therapist for C.B.
 

 On 21 November 2014, the court appointed Dr. Cynthia Sortisio to conduct the custody evaluation. Dr. Sortisio conducted home visits with both Mr. Berry and Ms. Berry on 13 March 2015, after which Ms. Berry complained hers was "not fair."
 

 After H.B. allegedly told Ms. Berry that his father had put his finger into his rectum, Ms. Berry had a conference with her therapist and attorney on 26 March 2015. Ms. Berry's therapist filed a report with DSS. DSS accepted this report for investigation. The DSS social worker conducted unannounced interviews with H.B. and C.B. at their schools.
 

 In his interview, C.B. stated "his mother makes him tell lies and things that are not true about his father." H.B. also denied his father ever touching his butt, putting his finger in his butt, or doing anything "bad" to him.
 

 Dr. Sortisio concluded her custody evaluation on 20 December 2015, while the DSS investigation was ongoing. Her evaluation concluded: (1) both parents needed the assistance of a parenting coordinator; (2) the children should be placed in therapy; (3) neither parent should initiate or discuss any conversation about inappropriate touching, and if either child initiates any such conversation, it should be referred to their therapist; (4) Ms. Berry's desire to exercise control has interfered with Mr. Berry's ability to co-parent the children; and, (5) primary custody of the children should be placed with Mr. Berry, if Ms. Berry is unable to set aside her focus on the abuse allegations and accept the recommendations on shared parenting.
 

 DSS used Dr. Sortisio's report as part of its investigation. In its final report on the allegations dated 7 March 2016, DSS substantiated emotional abuse and injurious environment charges against Ms. Berry, but found no support that either child had been sexually abused by Mr. Berry. The trial court did not include this report in its findings of fact.
 

 On 27 January 2016, Mr. Berry filed a motion to modify the temporary custody order, and sought primary legal and physical custody of the children. A permanent custody trial was held in district court 8 August
 
 *413
 
 through 12 August 2016. In an order dated 13 October 2016, the court granted the parties joint legal custody of the children. Ms. Berry was granted primary physical custody and Mr. Berry was granted secondary physical custody. The court also appointed a parenting coordinator.
 

 On 26 October 2016, Ms. Berry filed motions under Rules 52, 59, and 60 of the North Carolina Rules of Civil Procedure seeking relief from the 13 October orders. Mr. Berry filed a Rule 52(b) motion to amend the 13 October custody order on the same day, specifically seeking to include the final report from the last DSS investigation. The trial court heard post-trial motions, and entered an order modifying custody on 23 February 2017. The modified custody order granted in part and denied in part the parties' post-trial motions, and made minor changes to the custody arrangement. Mr. Berry timely filed notice of appeal on 24 March 2017.
 

 II. Jurisdiction
 

 Jurisdiction lies with this Court as an appeal from a final judgment under N.C. Gen. Stat. § 7A-27(b)(2) (2017).
 

 III. Issues
 

 Mr. Berry argues the trial court erred by: (1) granting primary physical custody to Ms. Berry and denying primary physical custody to him; (2) including findings of fact numbered 173 and 174, as they are not supported by any competent evidence; (3) concluding the custody order is in the best interests of the children; (4) denying Mr. Berry's Rule 52(b) motion to include in its findings of fact the disposition of the 2015-16 DSS investigation; (5) disregarding the court-appointed expert's recommendations on primary physical custody; (6) including findings of fact 119, 120 and 128, as they are mere recitations of trial testimony; and, (7) ordering Mr. Berry to submit to a sexual abuse assessment and to install pornography filters on his computer.
 

 IV. Standard of Review
 

 When this Court reviews child custody orders from a bench trial, we must "ascertain (1) whether the challenged findings of
 
 *912
 
 fact are supported by substantial evidence; (2) whether the trial court's findings of fact support its conclusions of law; and (3) whether the trial court abused its discretion in fashioning the custody and visitation order."
 
 Peters v. Pennington
 
 ,
 
 210 N.C. App. 1
 
 , 12,
 
 707 S.E.2d 724
 
 , 733 (2011). "[T]he trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings."
 
 Id.
 
 at 12-13,
 
 707 S.E.2d at 733
 
 . "Whether those
 
 *414
 
 findings of fact support the trial court's conclusions of law is reviewable
 
 de novo
 
 .
 
 Carpenter v. Carpenter
 
 ,
 
 225 N.C. App. 269
 
 , 270,
 
 737 S.E.2d 783
 
 , 785 (2013).
 

 "Broad discretion is given to the trial court in its fact-finding duties and in making ultimate custody determinations."
 
 O'Connor v. Zelinske
 
 ,
 
 193 N.C. App. 683
 
 , 687,
 
 668 S.E.2d 615
 
 , 617 (2008). "The evidence upon which the trial court relies must be substantial evidence and be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 Everette v. Collins
 
 ,
 
 176 N.C. App. 168
 
 , 170,
 
 625 S.E.2d 796
 
 , 798 (2006). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason.... [and] that [its decision] was so arbitrary that it could not have been the result of a reasoned decision."
 
 White v. White
 
 ,
 
 312 N.C. 770
 
 , 777,
 
 324 S.E.2d 829
 
 , 833 (1985).
 

 V. Custody Order
 

 A. Findings of Fact
 

 Mr. Berry argues the trial court erred by including findings of fact 173 and 174, as they are unsupported by competent evidence. We disagree.
 

 "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."
 
 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991).
 

 These two contested findings of fact include:
 

 173. The parties are fit and proper for the custodial roles assigned to them in the decretal section of this Order.
 

 174. It is in the minor children's individual and collective best interests that their legal and physical custody be awarded as set forth below.
 

 The district court's thirty-eight page order also includes other numerous and uncontested findings of fact, including: (1) Ms. Berry's role as the children's primary caregiver throughout their lives since birth; (2) her involvement in their education and extracurricular activities; (3) the appropriateness of her home; (4) the fact Ms. Berry is "a good parent" and is very close and bonded with her children; (5) Ms. Berry's progress in therapy to manage her anxiety and stressors in a positive manner; and, (6) her use of therapy to seek advice on co-parenting and proper responses to her children's behaviors.
 

 *415
 
 This substantial evidence provides support for the trial court to find and conclude, in its discretion, that each parent is "fit and proper" for their assigned roles and the resulting custody order is in the best interests of the children. Mr. Berry's arguments concerning these two findings of fact fail to show any abuse of the trial court's discretion that would allow us to set aside or reverse the trial court's conclusions. These arguments are overruled.
 

 Mr. Berry also argues three findings of fact, numbers 119, 120, and 128, are not actual findings, but mere recitations of trial testimony. Beyond raising this issue, Mr. Berry provides no support for this argument. However, "[presuming],
 
 arguendo
 
 , that those findings of fact were only [recitations], the record [evidence and the order] still contain[ ] findings of fact, not challenged by defendant or already determined to be supported by competent evidence by this Court, to support the trial court's 'best interest' determination."
 
 Hall v. Hall
 
 ,
 
 188 N.C. App. 527
 
 , 532,
 
 655 S.E.2d 901
 
 , 905 (2008). Mr. Berry's arguments concerning those three findings of fact do not show any abuse of the trial court's findings or reversible error in its conclusions. These arguments are overruled.
 

 *913
 

 B. Conclusions of Law
 

 Mr. Berry argues the trial court erroneously ignored competent evidence contrary to the ultimate conclusion, disregarded the recommendations of its court-appointed expert, and no competent evidence supports the trial court assigning primary custody to Ms. Berry.
 

 Within the 170 uncontested findings of fact, sufficient evidence supports the trial court continuing primary physical custody of the children with Ms. Berry. While some of the findings of fact clearly show Ms. Berry's less positive traits and negative behaviors, as the finder of fact "it is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial."
 
 Phelps v. Phelps
 
 ,
 
 337 N.C. 344
 
 , 357,
 
 446 S.E.2d 17
 
 , 25 (1994).
 

 In the same manner, the trial court, as finder of fact, retains discretion over "the weight and credibility" to accord to expert witnesses' opinions and conclusions.
 
 See
 
 id.
 

 The trial court's order included Dr. Sortisio's findings, including her ultimate recommendation in favor of Mr. Berry, among its own findings of fact, but it was under no obligation to assign any or greater weight to Dr. Sortisio's findings, or to regard or hold them to be binding and conclusive of the ultimate issue.
 
 See
 

 In re K.G.W.
 
 , --- N.C. App. ----, ----,
 
 791 S.E.2d 540
 
 , 542 (2016).
 

 *416
 
 Nothing Mr. Berry argues indicates the trial court disregarded its appointed expert's findings; it merely exercised its appropriate role as the ultimate fact finder in weighing the evidence presented before it.
 
 See
 

 Riley v. Ken Wilson Ford, Inc.
 
 ,
 
 109 N.C. App. 163
 
 , 168,
 
 426 S.E.2d 717
 
 , 720 (1993) ("When the trial judge sits as trier of fact [he or] she has the duty to determine the credibility of the witnesses and weigh the evidence[.]").
 

 It is unnecessary to address Mr. Berry's argument asserting the trial court ignored competent evidence. Long ago, our Supreme Court stated: "[t]he trial court must itself determine what pertinent facts are actually established by the evidence before it, and
 
 it is not for an appellate court to determine de novo the weight and credibility to be given to evidence disclosed by the record on appeal."
 

 Coble v. Coble
 
 ,
 
 300 N.C. 708
 
 , 712-13,
 
 268 S.E.2d 185
 
 , 189 (1980) (emphasis supplied).
 

 Uncontested facts, binding upon appeal, exist to support the trial court's ultimate conclusion to continue and award Ms. Berry with primary physical custody, expressly subject to the conditions set forth in the order. These uncontested findings are sufficient to uphold the trial court's conclusion, even in the face of evidence and findings of fact that would support a contrary conclusion.
 
 See
 

 Peters
 
 ,
 
 210 N.C. App. at 12-13
 
 ,
 
 707 S.E.2d at 733
 
 . Mr. Berry's arguments concerning the uncontested findings and factually supported conclusions of law are overruled.
 

 C. Unsupported Arguments
 

 Mr. Berry argues the trial court erred in denying his Rule 52(b) motion and by requiring him to undergo a sexual abuse assessment and follow recommended treatment and to install software to block "inappropriate and harmful material" on his electronic devices. Outside these bare assertions, Mr. Berry does not provide any support for either argument, other than to assert the trial court was biased against him and showed a preference for maternal primary custody.
 

 In the absence of any recusal motions or hearing, or anything other than his disagreement with the trial court's exercise of discretion and conclusions, we decline to address and dismiss them.
 
 See
 
 N.C. R. App. P. 28 (declining to address arguments on appeal which are not supported by case law or other authority).
 

 VI. Conclusion
 

 The trial court exercises and retains wide discretion in adjudicating conflicting evidence, in fact-finding, and in crafting custody orders.
 
 O'Connor
 
 ,
 
 193 N.C. App. at 687
 
 ,
 
 668 S.E.2d at 617
 
 . The trial court's
 
 *417
 
 findings of fact are supported by substantial and competent evidence. Even though some findings may be mere recitations of testimony or would support contrary conclusions, sufficient findings exist to support the trial court's exercise of discretion and its conclusions to award continued primary custody to
 
 *914
 
 Ms. Berry.
 
 See
 

 Peters
 
 ,
 
 210 N.C. App. at 12
 
 ,
 
 707 S.E.2d at 733
 
 .
 

 Plaintiff has failed to show the trial court abused its discretion in its adjudications and determinations of the credibility or weight of the evidence presented. Plaintiff has also failed to show reversible error in his challenges to the competent evidence underlying the uncontested findings of fact to support the trial court's conclusions in the custody order. "[I]t is not for an appellate court to determine
 
 de novo
 
 the weight and credibility to be given to evidence disclosed by the record on appeal."
 
 Coble,
 

 300 N.C. at 712-13
 
 ,
 
 268 S.E.2d at 189
 
 .
 

 We dismiss any unsupported arguments. The trial court's custody order is affirmed.
 
 It is so ordered.
 

 AFFIRMED.
 

 Judges HUNTER and DAVIS concur.