IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-134

No. COA20-532

Filed 20 April 2021

Catawba County, No. 17CVD2149

EAMON ALBERT FECTEAU, Plaintiff,

v.

ELIZABETH SPIERER, Defendant,

v.

LARRY SPIERER, and
PEARL JOSEPHINE SPIERER, Intervenors.

Appeal by intervenors from order entered 20 December 2019 by Judge Sherri W. Elliott in Catawba County District Court. Heard in the Court of Appeals 24 March 2021.

*Wesley E. Starnes, PC, by Wesley E. Starnes, for Intervenors-Appellants.*

*Helton, Cody, & Associates, PLLC, by Blair E. Cody, III, for Plaintiff-Appellee.*

*No brief filed for Defendant.*

CARPENTER, Judge.

¶ 1    Larry Spierer and Pearl Josephine Spierer ("Intervenors"), maternal grandparents to minor child R.F., appeal from a custody modification order, which

granted primary physical and legal custody to Eamon Albert Fecteau ("Plaintiff"), R.F.'s father; secondary physical custody and visitation to Intervenors; and supervised visitation to Elizabeth Spierer ("Defendant"), R.F.'s mother. We find no abuse of discretion by the trial court in entering the modification order; therefore, we affirm.

## I. Factual & Procedural Background

The uncontroverted evidence presented at trial tends to show the following: Plaintiff and Defendant married on 10 May 2014 and separated on 4 July 2015. Plaintiff and Defendant share one child together, R.F., who was born on 16 July 2013—prior to the parties' marriage. Defendant has two other children by two different fathers; she has custody of her youngest daughter while Intervenors have custody of her oldest child, a son. On 31 October 2016, Plaintiff filed a complaint for custody, equitable distribution, and absolute divorce. On 21 November 2016, Intervenors filed a motion to intervene on the issue of custody in the pending matter. On 2 February 2017, the trial court entered an order allowing the intervention. On the same day, Intervenors filed an answer and a counterclaim for child custody.

Following a hearing, the trial court entered a temporary custody order granting Intervenors "custody, care and control of [R.F.] until further order of the Court." On 19 July 2017, the trial court entered a consent order based on a memorandum of order filed on 19 July 2017, granting primary physical and legal

custody of R.F. to Intervenors and secondary physical custody to Plaintiff. On 26 March 2018, Plaintiff filed a motion for modification of child custody, and then filed an amended motion to modify child custody on 5 March 2019. Plaintiff sought primary physical custody and joint legal custody with Defendant. In his amended motion, he alleged there had a been a substantial change of circumstances affecting the child's well-being and the modification was in the best interest of the minor child.

¶ 4        On 13 March 2019 and 17 July 2019, hearings were held before the presiding judge, the Honorable Sherri W. Elliott. On 20 December 2019, Judge Elliott entered a modification order in which she granted primary physical custody of R.F. to Plaintiff, secondary custody and visitation to Intervenors, and visitation to Defendant under the supervision of Intervenors. On 16 January 2020, Intervenors filed a timely written notice of appeal from the modification order.

## II. Jurisdiction

¶ 5        We first address Intervenors' improper citation to N.C. Gen. Stat. § 7A-27 (2019) in their statement of the grounds for appellate review. They rely on subsection (c) of Chapter 7A, Section 27 as authority for their appeal of this case. However, N.C. Gen. Stat. § 7A-27(c) was repealed effective 23 August 2013; therefore, Intervenors have not provided an adequate "citation of the statute . . . permitting appellate review" pursuant to the North Carolina Rules of Civil Procedure. N.C. R. App. P. 28(b)(4).

¶ 6        Our Supreme Court has confirmed that "compliance with the Rules is required"; however, it has also clarified that not every violation of the Rules warrants automatic dismissal—particularly when the "violations do not impede comprehension of the issues or frustrate the appellate process." *State v. Hart*, 361 N.C. 309, 311, 313 644 S.E.2d 201, 202–03 (2007) (citations and quotations omitted); *see State v. Burke*, 185 N.C. App. 115, 118, 648 S.E.2d 256, 258 (2007) (allowing appellate review despite the appellant's minor violation of Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure for citing to the transcripts rather than the record in referring to assignments of error).  Furthermore, Rule 2 allows for the Court's suspension or variation of the appellate rules in cases pending in the Court so as "[t]o prevent manifest injustice to a party . . . ."  N.C. R. App. P. 2.

¶ 7        Here, Intervenors incorrectly cite to the repealed subsection (c) of N.C. Gen. Stat. § 7A-27 rather than N.C. Gen. Stat. § 7A-27(b)(2).  Considering that this error is minor, and Intervenors' intent to cite to the subsection allowing an appeal of right from a final judgment of a district court opinion is apparent, an automatic dismissal of this case is not proper.  Furthermore, the error does not interfere with the Court's comprehension of the issues of the case or frustrate the appellate process; therefore, we allow the appeal.  *See Hart*, 361 N.C. at 311, 313 644 S.E.2d at 202–03.

### III. Issues

¶ 8        The issues on appeal are whether: (1) the trial court erred by finding as fact in

its modification order that the initial custody order had lacked findings of fact with respect to whether Plaintiff or Defendant are unfit or have acted inconsistently with their constitutionally-protected right as parents; (2) the trial court's findings of fact and conclusions of law are sufficient to support its order modifying child custody based on a substantial change in circumstances affecting the welfare of the child.

## IV. Analysis

¶ 9    On appeal, Intervenors contend that the trial court erred in modifying the 19 July 2017 consent order because (1) it improperly "consider[ed] the lack of a prior finding of fact" regarding Plaintiff's and Defendant's constitutionally-protected status as parents and (2) entered the modification to the consent order where the "competent evidence does not support a finding of fact or conclusion of law that there was a substantial change of circumstances affecting the welfare of the minor child . . . ." We disagree.

### A. Standard of Review

¶ 10    "It is a long-standing rule that the trial court is vested with broad discretion in cases involving child custody." *Pulliam v. Smith*, 348 N.C. 616, 624, 501 S.E.2d 898, 902 (1998) (citation omitted). Accordingly, we review the trial court's determination of a motion to modify custody for an abuse of discretion. *Id.* at 625, 501 S.E.2d at 902.

When reviewing a trial court's decision to grant or deny a

motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

. . . .

In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law. With regard to the trial court's conclusions of law, our case law indicates that the trial court must determine whether there has been a substantial change in circumstances and whether that change affected the minor child. Upon concluding that such a change affects the child's welfare, the trial court must then decide whether a modification of custody was in the child's best interest. If we determine that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of the minor child and that modification was in the child's best interests, we will defer to the trial court's judgment and not disturb its discretion to modify an existing custody agreement.

*Shipman v. Shipman*, 357 N.C. 471, 474–75, 586 S.E.2d 250, 253–54 (2003) (citations and quotations omitted).

### B. Absence of Findings of Fact in Initial Custody Order

¶ 11    In their first argument, Intervenors contend that the trial court erred by considering the absence of findings of fact in the initial custody order regarding whether Plaintiff and Defendant are unfit or have acted in a manner inconsistent with their constitutionally-protected right as parents to custody, care, and control of their minor child. In doing so, Intervenors essentially argue that the trial court failed

to follow the precedent established in *Bivens v. Cottle*, 120 N.C. App. 467, 469, 462 S.E.2d 829, 831 (1995), which held that the *Petersen* presumption in favor of a natural parent does not apply to a custody modification proceeding. In contrast, Plaintiff asserts that since the trial court did not make any "findings of fact [ ]or conclusions of law that the evidence, as it relates to either parents' constitutionally protected status, was [based on] clear, cogent and convincing evidence," the trial court "did not improperly consider" such an absence of findings in the initial order. After careful review of the record, we conclude that findings of fact 99, 100, and 101 are unnecessary for our review of the modification order in the case *sub judice*; therefore, we do not reach the merits of the parties' arguments with respect to these findings.

¶ 12        In *Petersen v. Rogers*, this Court held that "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount rights of parents to custody, care, and control of their children must prevail" over non-natural parents. 337 N.C. 397, 403–04, 445 S.E.2d 901, 905 (1994). Subsequently, *Bivens v. Cottle* limited the *Petersen* standard to only initial custody proceedings and rejected its application to custody modification orders. *Bivens*, 120 N.C. App. at 469, 462 S.E.2d at 831; *see also Lambert v. Riddick*, 120 N.C. App. 480, 482–83, 462 S.E.2d 835, 836 (1995). To modify custody orders, a party must follow the statutory requirements set forth in N.C. Gen. Stat. § 50-13.7(a). Accordingly, a trial court must "determine[ ] that (1) there has been a substantial change in

circumstances affecting the welfare of the child; and (2) a change in custody is in the best interest of the child." *Bivens*, 120 N.C. App. at 469, 462 S.E.2d at 831 (citations omitted); *see also* N.C. Gen. Stat. § 50-13.7(a) (2019). Thus, in a custody modification proceeding, a fit parent who has not neglected the welfare of his or her children does not enjoy the same right to custody superior to that of a non-parent as the fit parent would possess in an initial custody proceeding. *Bivens*, 120 N.C. App. at 470, 462 S.E.2d at 831. "To hold otherwise, would ease the burden of proof on a parent in a modification proceeding who had lost custody to a non-parent in a prior proceeding." *Brewer v. Brewer*, 139 N.C. App. 222, 230, 533 S.E.2d 541, 548 (2000).

¶ 13        In *Bivens*, the trial court awarded custody of the parties' children to the maternal grandparents, despite the trial court finding as fact that the children's mother "was a fit and proper person to have [ ] primary custody, care and control of the minor children." *Bivens*, 120 N.C. App. at 468, 462 S.E.2d at 830. The mother did not appeal from or challenge the initial custody order. *Id.* at 469, 462 S.E.2d at 830. Relying on the *Petersen* presumption, she subsequently filed a motion to modify the custody order, arguing that she was not required to show a substantial change in circumstances as a natural parent since the trial court was mandated to award her custody over the non-parents. *Id.* at 468, 462 S.E.2d at 830. The trial court awarded the mother custody despite her insufficient showing of changed circumstances. *Id.* at 468, 462 S.E.2d at 830. The grandparents appealed from the trial court's order, and

this Court reversed the judgment, holding that the modification was improperly entered. *Id.* at 468, 462 S.E.2d at 830.

¶ 14        In this case, Plaintiff consented to a custody order in which third-party Intervenors were awarded primary physical and legal custody of his minor child, and he was awarded secondary physical custody. Neither Plaintiff nor Intervenors appealed from or otherwise objected to the consent order. Subsequent to the filing of the consent order, Plaintiff filed a motion for modification of child custody, as well as an amended motion to modify child custody in which he sought primary physical custody and joint legal custody with Defendant. In both motions, Plaintiff alleged a substantial change in circumstances warranting the modification to the custody order. The trial court, after considering the changed circumstances, awarded Plaintiff primary legal and physical custody of R.F.

¶ 15        Although the case at bar shares some factual similarities with *Bivens*, we are not persuaded by Intervenors' argument that *Bivens* compels this Court to reverse the 20 December 2019 custody order. In comparing this case and *Bivens*, it is clear that in both cases: the grandparents were awarded child custody over the natural parents; the natural parents did not object to or appeal from the custody orders; subsequently, a natural parent in each case moved to modify the order; and the natural parents were awarded custody following their motions. In *Bivens*, this Court held that the natural parent was not entitled to custody because she failed to meet

her burden in showing changed circumstances and was awarded custody erroneously based on an improper application of the *Petersen* presumption. Conversely, here, Plaintiff put forth substantial evidence of changed circumstances and did not argue that he was entitled to custody over third parties based on his constitutionally-protected status as a natural parent. Although counsel for Plaintiff concedes that it misstated a fact from *Bivens* at the 17 July 2019 hearing by stating that the natural parent seeking to modify the custody order in that case "had a finding of unfitness inconsistent with the Constitution of protected rights," Intervenors merely speculate on appeal with regard to the trial court's application of the *Petersen* standard and the trial court's reliance on Plaintiff's counsel's statement in entering its order. Furthermore, Intervenors contend in their brief that "[t]he proper avenue [for modifying the custody order] would have been to . . . file a motion in the cause alleging a substantial change of circumstance, without considering the constitutional right to parent the child." Based on the record, Plaintiff has done exactly that—he filed two motions alleging a substantial and material change in circumstances without raising his constitutional rights as a natural parent.

¶ 16        Intervenors point to the trial court's findings of fact 99, 100, and 101 to assert that the trial court entered its modification order in part based on the initial custody order's lack of findings of fact as to the natural parents' fitness or constitutionally protected status as parents. Intervenors challenge the following findings of fact:

99. There are no findings in any order in this file that the Plaintiff is unfit and/or has acted inconsistent with his constitutionally protected rights to parent / raise his child.

100. There are no findings in any order in this file that the Defendant is unfit and/or has acted inconsistent with her constitutionally protected rights to parent / raise her child.

101. The Defendant's choices and instability before and since the entry of the prior Order constitute acting in a manner inconsistent with her constitutionally protected status.

¶ 17    In this case, findings of fact numbers 99 and 100 reference the lack of findings in the prior order with regard to the parents' fitness and constitutionally-protected status, and finding of fact 101 relates to Defendant's conduct prior to and subsequent to the entry of the consent order. In light of our holding in *Bivens* that the *Petersen* presumption is inapplicable to a modification of a child custody order, findings of fact 99, 100, and 101 are unnecessary to our review of the modification order. *See Bivens*, 120 N.C. App. at 469, 462 S.E.2d at 830. Furthermore, these findings were unnecessary to support the trial court's conclusions of law 2 and 3 that (a) "[t]here has been a substantial change in circumstances since the entry of the current order affecting the welfare of the minor child" and that (b) "[t]he best interest of the minor child would be for the Court to modify the current custody order." The aforementioned conclusions of law together with the trial court's ample findings of fact to support

these conclusions satisfy the statutory requirements under N.C. Gen. Stat. § 50-13.7(a) for a modification of a custody order.  Therefore, the trial court did not err in including findings of fact 99, 100, and 101 in its modification order because these factual findings were immaterial to the trial court's determination of whether Plaintiff had made a "showing of changed circumstances" as statutorily required.  *See* N.C. Gen. Stat. § 50-13.7(a).

## C. Substantial Change in Circumstances

¶ 18        In their second argument, Intervenors contend that the findings of fact in the modification order are not supported by competent evidence showing a substantial change in circumstances affecting the welfare of the minor child.  We disagree.

¶ 19        The modification of a child custody order is governed by N.C. Gen. Stat. § 50-13.7.  The statute provides: "an order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in this cause and a showing of changed circumstances by either party or anyone interested subject to the limitations of [N.C. Gen. Stat. §] 50-13.10."  N.C. Gen. Stat. § 50-13.7(a).

¶ 20        "[T]he modification of a custody decree must be supported by findings of fact based on competent evidence that there has been a substantial change of circumstances affecting the welfare of the child, and the party moving for such modification assumes the burden of showing such change of circumstances." *Blackley v. Blackley*, 285 N.C. 358, 362, 204 S.E.2d 678, 681 (1974) (citations omitted).  "Where

no exception is taken to a finding of fact [made] by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Berry v. Berry*, 257 N.C. App. 408, 414, 809 S.E.2d 908, 912 (2018) (citation omitted). The effects of the substantial change in circumstances may be self-evident or may be proved by a "showing of evidence *directly* linking the change to the welfare of the child." *Shipman*, 357 N.C. at 478, 586 S.E.2d at 256 (emphasis in original).

¶ 21     On appeal, Intervenors challenge only finding of fact 103. The trial court's remaining one hundred and three findings of fact are uncontested; thus, are presumed to be supported by competent evidence. *Berry*, 257 N.C. App. at 414, 809 S.E.2d at 912. Finding of fact 103 summarizes the basis for the trial court's conclusion that a substantial change in circumstances affecting the welfare of the minor child occurred:

> 103.     [t]here have been substantial changes in circumstances since the entry of the current order. Those circumstances include the minor child starting school, the Plaintiff getting married and moving into a new home with his wife, step-son, and minor child, the Defendant enrolling in in-patient rehab in Texas for her drug addiction, the Defendant's unemployment, the Defendant giving birth to another child, the Plaintiff's change in employment wherein he now has employer provided health insurance for his family and paid vacation time, the minor child's relationship with her step-brother [J.E.] and her step-mother Kelsey.

¶ 22     We first examine the trial court's finding of fact 103 to determine whether it is

supported by substantial evidence. *See Shipman*, 357 N.C. at 474, 586 S.E.2d at 253.

¶ 23 Following two hearings, the trial court made the following pertinent findings of fact, *inter alia*, in support of its determination that a substantial change in circumstances had occurred that warranted modification of the consent order:

> 12. Since the entry of the prior order the Plaintiff has remarried and is currently living with his wife, Kelsey Fecteau . . . in an approximate 1,500 square foot home with 3 bedrooms, 2 full bathes on approximately a ¼ acre in the cul-de-sac of a quiet neighborhood. The Plaintiff and his wife are leasing the residence with an option to buy.
> . . . .
> 15. The Plaintiff has a step-son as a result of his marriage to Kelsey, said child being [J.E.] . . . who is 5 years of age. [J.E.] lives with the Plaintiff and Kelsey on a full-time basis. [J.E.] is the same age and in the same grade at school as his step-sister, [R.F.], who is the subject of this action.
> . . . .
> 20. [R.F.] and [J.E.] have bonded and have a close loving relationship. They share some toys and frequently play together when they are both in the Plaintiff's home.
> . . . .
> 24. Kelsey feels as though [R.F.] is very much a part of their family, and the four of them complete their family unit.
> . . . .
> 26. The Plaintiff presented photographs of his current home which is a fit and appropriate residence for the minor child, [R.F]. Said residence is appropriately appointed and well maintained.
> . . . .
> 30. The Plaintiff and his family regularly attend Hickory Church of Christ. The Plaintiff and his

family are active in the church. [J.E.] and [R.F] and involved in the "kingdom kids" program at the church. [R.F.] is not able to be as involved in certain activities / programs at the church as [J.E.] because of the lack of custodial time with the Plaintiff.

31.  [J.E.] and [R.F.] have formed a close brother / sister relationship during the marriage of the Plaintiff and Kelsey.

. . . .

37.  [R.F.] is currently not involved in any extra-curricular activities when she is with the Intervenors. The Plaintiff is currently not able to enroll [R.F.] in cheerleading or Scouts based on the current custody schedule and his custodial time.

. . . .

39.  The Plaintiff has Blue Cross Blue Shield health insurance through his employer. The Plaintiff currently carries health insurance on his wife, Kelsey, and both [J.E.] and [R.F.]. The Plaintiff did not have health insurance available through his former employer at the time the current order was entered.

. . . .

41.  The minor child [R.F.] prefers to share a bedroom with her step-brother [J.E.], even though there is a third bedroom.

. . . .

45.  Since the entry of the current order, the Defendant has had a third child, by another man. The Defendant has 3 children with 3 different men. The Plaintiff is the only father of the Defendant's children who was married to the Defendant.

. . . .

58.  Since the entry of the current order, the Defendant attended out-patient drug rehab in Texas. The Defendant also stayed at a pregnancy care center / adoption center while in Texas.

. . . .

61.  The Defendant is currently unemployed. She last

worked at Wal-Mart but was relieved of that employments [sic] for missing work.

. . . .

104. This Order will serve the overall benefit of the minor child.

Intervenors did not challenge findings of fact 12, 15, 20, 24, 26, 30, 31, 37, 39, 41, 45, 58, 61 or 104; thus, these findings are presumed to be supported by competent evidence and are binding on this Court on appeal. *See Berry*, 257 N.C. App. at 414, 809 S.E.2d at 912. Findings of fact 12, 15, 20, 24, 26, 30, 31, 37, 39, 41, 45, 58, 61 and 104 provide ample support for finding of fact 103; therefore, we conclude finding of fact 103 was supported by competent, substantial evidence.

Next, we determine whether the trial court's findings of fact support its conclusions of law. *See Shipman*, 357 N.C. at 474, 586 S.E.2d 253. Intervenors take exception to one conclusion of law, conclusion of law 2, as not being "supported by findings of fact or competent evidence," although they fail to explain their argument in their appellate brief. We disagree with Intervenor's contention that conclusion of law 2 is not supported by competent evidence.

Conclusion of law 2 states: "There has been a substantial change in circumstances since the entry of the current order affecting the welfare of the minor child." The modification order contained numerous unchallenged findings of fact to support the trial court's legal conclusion that a substantial change in circumstances had occurred since the 19 July 2017 consent order was entered, which affected the

welfare of R.F.

¶ 27    We next consider whether the trial court erred in finding a substantial change in circumstances to warrant a modification to the trial court's prior custody order. *See Shipman*, 357 N.C. at 481, 586 S.E.2d 257. "[T]he trial judge's concern is to place the child in an environment which will best promote the full development of his physical, mental, moral, and spiritual faculties." *Blackley*, 285 N.C. at 362, 204 S.E.2d at 680 (citations omitted). "[C]ourts must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child." *Pulliam*, 348 N.C. at 619, 501 S.E.2d at 899. A modification of custody may be supported by either positive or negative changes. *Id.* at 620, 501 S.E.2d at 900.

¶ 28    Intervenors argue that the trial court's findings with respect to Plaintiff's change in residence, remarriage, and new employment as well as the minor child's starting school were insufficient to show that a substantial change in circumstances occurred to modify the consent order or that the changes affected the welfare of the child. Intervenors contend multiple times in their brief that the trial court erred in modifying the custody order because it failed to "engage in the necessary comparison of Plaintiff's circumstances with those of Intervenors." However, this is not the standard by which the Courts in North Carolina determine child custody, although a

comparison between the circumstances of the parties may be appropriate in limited scenarios. *See, e.g.*, *Griffith v. Griffith*, 240 N.C. 271, 275, 81 S.E.2d 918, 921 (1954) (stating that the trial court must make a "comparison[ ] between the two applicants upon consideration of all relevant factors, which of the two is best-fitted to give the child the home-life, care, supervision that will be most conducive to its well-being" in considering the relocation of a minor child to another state in a custody dispute); *see also Evans v. Evans*, 138 N.C. App. 135, 530 S.E.2d 576 (2000). Rather, in *Pulliam*, our Supreme Court interpreted N.C. Gen. Stat. § 50-13.7 to mean that the mandated "showing of changed circumstances" must be, or are likely to be impactful on the minor child. *See Pulliam*, 348 N.C. at 620, 501 S.E.2d at 900; *see also* N.C. Gen. Stat. § 50-13.7(a).

¶ 29        Furthermore, Intervenors assert that Defendant's enrollment in drug rehabilitation, her unemployment, and her giving birth to a third child do not support the trial court's findings of a substantial change in circumstances. We disagree; the trial court did not consider Plaintiff's new residence, employment, remarriage or R.F.'s starting of school as sole, standalone factors in concluding there had been a substantial change in circumstances—rather, each factor was but one of several factors that the trial court utilized in its analysis to reach the decision to modify the custody order.

¶ 30        In this case, the effects of the substantial change in circumstances were self-

evident on the minor child's welfare; thus, evidence directly linking the changes and the welfare of R.F. was not required. *Shipman*, 357 N.C. at 478, 586 S.E.2d at 256. There were numerous substantial changes in circumstances that had an obvious positive impact on R.F.'s welfare including: Plaintiff's new employment which provided health insurance, paid vacation, and more flexibility; Plaintiff's new three-bedroom home; R.F. entering a new stage in life by beginning first grade with her stepbrother; Plaintiff marrying his girlfriend, Kelsey; and R.F.'s close relationships with Kelsey and her stepbrother of the same age and grade. Based on these factual findings, Plaintiff's living situation, home life, and his ability to care and provide for R.F. had changed substantially since the 19 July 2017 consent order was entered. *See Metz v. Metz*, 138 N.C. App. 538, 530 S.E.2d 79 (2000) (affirming there was a substantial change in circumstances based on the father's "reformed lifestyle" as opposed to adverse changes in the mother's lifestyle); *Deanes v. Deanes*, 269 N.C. App. 151, 837 S.E.2d 404 (2020) (holding that a minor child's strong bond with his stepmother and his father's new child supported the conclusion of a substantial change in circumstances); *Shell v. Shell*, 261 N.C. App. 30, 819 S.E.2d 566 (2018) (affirming that a mother's remarriage was a substantial change in circumstances affecting the minor children's welfare due to finding that the stepfather's "development of a strong relationship with the children and his positive involvement in the children's lives").

¶ 31        Here, since the entry of the prior order, Plaintiff went from sharing a home with a roommate that did not have space for the minor child to stay the night, to remarrying and moving into a three-bedroom home that could comfortably accommodate R.F. residing with him. Upon marrying, Plaintiff became the stepfather to a child the same age as his daughter, and Plaintiff shares a close bond with him in a "dad" role as evidenced by Plaintiff's participation in J.E.'s extracurricular activities, school activities, and homework responsibilities. The findings of fact also show that Plaintiff's new wife has warmly accepted R.F. into their family unit, and R.F. has developed strong, loving relationships with her stepmother and her stepbrother. The family regularly attends church together, and Plaintiff is interested in enrolling R.F. in extracurricular activities with her stepbrother. Based on the trial court's findings, if Plaintiff had additional custody time, he would enroll R.F. in extracurricular activities such as cheerleading, Cub Scouts, and his church's programs for children. The record also indicates that J.E. and R.F. would attend the same grade in the same school if R.F. lived with Plaintiff, which would allow Plaintiff or Kelsey to pick them both up from school together. The findings of fact show that Plaintiff has not missed visitation with R.F. and has sought additional custodial time but has only been allowed one overnight with R.F. since the entry of the prior order.

¶ 32        Plaintiff went from working two jobs at U-Haul and Dunkin' Donuts to working one job as a shop manager for an industrial engineering company, which gave him

more time to spend with R.F. through flexible scheduling and paid vacation. His new employment also provides health insurance to R.F., Kelsey, and J.E., which would clearly have a positive impact on R.F.'s physical welfare considering that her "toe walking" condition requires therapy appointments with an orthopedic specialist. Neither Intervenors nor Defendant carried health insurance on R.F. prior to Plaintiff obtaining insurance through his employment, and Intervenors choose to rely solely on the government-assisted program of Medicare rather than using the coverage Plaintiff provides to them for R.F. Plaintiff's "series of developments" in his life were sufficient to show a substantial change in circumstances that warranted modifying the consent order. *See Shipman*, 357 N.C. at 480, 586 S.E.2d at 257 (holding that a "series of developments" for a parent, including a change in employment, an imminent marriage, and a new home constituted a showing of a substantial change in circumstances that would likely be beneficial to the minor child). Additionally, it is evident that these changes would "promote the full development of [R.F.'s] physical, mental, moral, and spiritual faculties." *See Blackley*, 285 N.C. at 362, 204 S.E.2d at 680.

¶ 33      Although Plaintiff sought a joint legal custody arrangement with Defendant, the trial court made findings of fact regarding her unstable circumstances since the last order, and accordingly, precluded her from exercising primary or secondary custody. The trial court made the decision to continue Defendant's supervised

visitation of R.F. based on Defendant's substantial change in circumstances, including her: (1) unemployment; (2) enrollment in a Texas in-patient rehab for drug addiction; and (3) third child being born. These findings were supported by findings of fact 45, 58, and 61, to which Defendant did not take exception; thus, these findings of fact were binding on appeal. Findings of facts 45, 58, and 61 support the trial court's conclusion of law that there had been a substantial change in circumstances considering that Defendant now visits R.F. at Intervenors' house up to six nights per week when R.F. is in Intervenors' custody. Taken in conjunction with Plaintiff's beneficial changes to the welfare of the minor child, the trial court's conclusions of law warranted the trial court to modify the custody order in favor of Plaintiff.

¶ 34       Finally, we examine whether the trial court properly concluded that a modification to the consent order was in the minor child's best interest. "As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion." *Stephens v. Stephens*, 213 N.C. App. 495, 503, 715 S.E.2d 168, 174 (2011) (citation and quotations omitted). We hold that there is competent evidence to support the trial court's findings; therefore, we discern no abuse of discretion in the trial court's determination that the modification order was in R.F.'s best interest.

## V. Conclusion

¶ 35       We hold the trial court did not err by finding as fact in its modification order

that there was an absence of findings of fact in the initial custody order regarding whether Plaintiff or Defendant are unfit or have acted inconsistently with their constitutionally-protected right as parents because such findings of fact are superfluous in our determination of whether there had been a substantial change in circumstances. Moreover, we hold the trial court did not err by modifying the custody order because the trial court's conclusion of law that there had been a substantial change in circumstances is supported by findings of fact, which are in turn based on competent evidence. The substantial change in circumstances presented by Plaintiff justifies the trial court's decision to enter the modification order.

AFFIRMED.

Judges ARROWOOD and HAMPSON concur.