STROUD, Judge.
 

 *31
 
 Plaintiffs and defendant Shell appeal a custody modification order changing primary physical custody from defendant Shell to defendant Green. Because the trial court's findings of fact support its conclusion there had been a substantial change in circumstances affecting the best interest of the children and that modification would be in their best interest, we affirm.
 

 I. Background
 

 This appeal arises from the modification of a 2012 custody order. Plaintiffs, David and Donna Shell, are the paternal grandparents of the children, Sam and Kim.
 
 [1]
 
 Defendant David Shell is the son of plaintiffs and father of Sam and Kim. Defendant Nicole Green is the children's mother and has married since the prior order and is now Nicole McKiernan. We will identify all parties by their relation to Sam and Kim. Therefore,
 
 *32
 
 plaintiffs will be referred to as the "Grandparents," defendant Shell as "Father" and defendant Green as "Mother." Although both parents are "defendants," the interests of defendant Father are aligned with plaintiff Grandparents and are opposed to the interests of defendant Mother.
 

 The prior custody order was entered in May 2012. Father was granted sole legal and physical custody of the children and Mother had visitation rights. At the time of the prior order, Father and the children resided with Grandparents; they still lived with Grandparents at the time of the hearing on the motion to modify custody. Father "has limited education and intelligence[,]" struggles with literacy, and "relies heavily on his parents." In 2011, Mother had admitted to Father she was using marijuana, cocaine, and alcohol to excess. She was also "spending time" with a man who later went to prison for selling methamphetamine. She had moved four times in the ten months prior to the hearing because she could not afford rent or utilities. She also could not keep a job, and she was fired or quit jobs several times. At the time of the 2012 hearing, the children were ages five and two. Mother's home was 45 minutes away from the older child's school. In August 2011, Grandmother went to her home and found it was strewn with trash and empty alcohol containers. One child had cut her foot on glass on the floor, and Grandmother took her away from Mother's home. In September 2011, Mother had posted nude photos on the internet, was drinking heavily, and was not making good decisions. Father was living with his parents in a stable home.
 

 On 3 June 2016, Mother moved to modify custody alleging that since the prior custody order there had been a substantial change of circumstances affecting the welfare of the children because she had remained sober for several years, maintained a job for over two years, and gotten remarried. She also alleged
 
 *570
 
 that Father had become more difficult to deal with regarding visitation. He refused to send the children's homework so the children could complete it during visits with Mother, and he denied Mother information about the children's school activities and would not allow her to participate.
 

 On 17 and 30 January 2017, the trial court held a hearing on the motion to modify custody. The trial court entered an order modifying custody on 6 February 2017, which determined there had been a substantial change of circumstances affecting the welfare of the children and modified custody, granting Father and Mother joint legal custody, with Mother receiving primary physical custody. Father and Grandparents appeal.
 
 [2]
 

 *33
 
 II. Modification of Custody
 

 Father first contends that "the trial court erred in finding that there were substantial changed circumstances since the entry of the last custodial order in May 2012 when little, if anything, had changed [and] any changes that did occur did not affect the welfare of the children" and even "assuming
 
 arguendo
 
 that there was a substantial change in circumstance materially affecting the children, the trial court nevertheless abused its discretion by 'flipping' the previous custody arrangement and disrupting the children's stability and routine." (Original in all caps).
 

 A. Standard of Review
 

 It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a substantial change of circumstances affecting the welfare of the child warrants a change in custody. The party seeking to modify a custody order need not allege that the change in circumstances had an adverse effect on the child. While allegations concerning adversity are acceptable factors for the trial court to consider and will support modification, a showing of a change in circumstances that is, or is likely to be, beneficial to the child may also warrant a change in custody.
 

 As in most child custody proceedings, a trial court's principal objective is to measure whether a change in custody will serve to promote the child's best interests. Therefore, if the trial court does indeed determine that a substantial change in circumstances affects the welfare of the child, it may only modify the existing custody order if it further concludes that a change in custody is in the child's best interests.
 

 The trial court's examination of whether to modify an existing child custody order is twofold. The trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child. If the trial court concludes
 
 *34
 
 either that a substantial change has not occurred or that a substantial change did occur but that it did not affect the minor child's welfare, the court's examination ends, and no modification can be ordered. If, however, the trial court determines that there has been a substantial change in circumstances and that the change affected the welfare of the child, the court must then examine whether a change in custody is in the child's best interests. If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order.
 

 When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
 

 Our trial courts are vested with broad discretion in child custody matters. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and
 
 *571
 
 flavors that are lost in the bare printed record read months later by appellate judges. Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary.
 

 In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law. With regard to the trial court's conclusions of law, our case law indicates that the trial court must determine whether there has been a substantial change in circumstances and whether that change affected the minor child. Upon concluding that such a change affects the child's welfare, the trial court must then decide whether a modification of custody was in the child's best interests. If we determine that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of the minor child and that modification was in the child's
 
 *35
 
 best interests, we will defer to the trial court's judgment and not disturb its decision to modify an existing custody agreement.
 

 Shipman v. Shipman
 
 ,
 
 357 N.C. 471
 
 , 473-75,
 
 586 S.E.2d 250
 
 , 253-54 (2003) (citations, quotation marks, and brackets omitted).
 

 B. Substantial Change in Circumstances
 

 Father does not challenge the findings of fact as unsupported by the evidence but contends that the facts are not enough to establish a substantial change in circumstances affecting the welfare of the children since entry of the 2012 order. His argument addresses several of the circumstances addressed by both the 2012 order and the order on appeal. We address each in turn.
 

 1. Sobriety
 

 In the 2012 order, as noted above, Mother's living circumstances were very unstable and she was unable to care for the children properly. In the order on appeal, the trial court found that when the 2012 order was entered, Mother had been sober for about eight months, but she was still "struggling with her sobriety" and that she was selfish. As of the 2017 hearing, Mother had been sober from drugs and alcohol for about four years. Father argues Mother's sobriety is not a change of circumstances because at both times, she was sober. We disagree.
 

 Changes in circumstances may be either negative or positive.
 
 See, e.g.,
 

 Pulliam v. Smith
 
 ,
 
 348 N.C. 616
 
 , 619,
 
 501 S.E.2d 898
 
 , 899 (1998) ("[C]ourts must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child. In appropriate cases, either may support a modification of custody on the ground of a change in circumstances."). Here, the trial court's findings show that Mother had made positive changes that affect the children. The trial court's findings in the 2012 order detailed the detrimental effects Mother's drug and alcohol abuse was having on the children, resulting in her inability to keep a job or residence and her poor judgment. In contrast, the order on appeal details how these things had improved dramatically: Mother had maintained a stable job and home and had become a loving and caring parent. There is no doubt that a parent's alcohol and drug abuse normally has negative effects on children, as Mother's did prior to the 2012 order. Mother's maintainance of her sobriety for over four years and the resulting changes in her life show that her ability to
 
 *36
 
 care for the children had improved dramatically.
 
 See generally
 

 Dreyer v. Smith
 
 ,
 
 163 N.C. App. 155
 
 , 159,
 
 592 S.E.2d 594
 
 , 596 (2004) ("Here, however, the trial court made ample findings of fact describing the negative effect of Ms. Smith's remarriage on the children. We hold that these findings-setting forth the children's exposure to alcohol abuse, violent behavior, illegal drugs, and a risk of physical harm-support the trial court's conclusion that there has been a substantial change of circumstances affecting the welfare of the children.").
 

 Father also contends that even if Mother's sobriety is a change of circumstances, it has no effect on the children. This
 
 *572
 
 argument is difficult to understand, since Father contended-quite correctly-in 2012 that Mother's substance abuse was still having detrimental effects on the children, even after she had been sober for a few months. Her life was still unstable, even if she was not actively using drugs or alcohol. Considering the other findings in the order regarding the positive changes in Mother's life which have accompanied her sobriety, this argument is entirely without merit.
 
 See
 
 id.
 

 The trial court's order includes many findings detailing these effects-Mother's involvement with the children, her ability to provide a home and support them, and her becoming a caring parent instead of a selfish and unreliable one.
 

 2. Remarriage
 

 Father next contends that Mother's remarriage was not a substantial change of circumstances, as the relationship between the children and their now-stepfather did not change. "[R]emarriage, in and of itself, is not a sufficient change of circumstance affecting the welfare of the child to justify modification of the child custody order without a finding of fact indicating the effect of the remarriage on the child."
 
 Evans v. Evans
 
 ,
 
 138 N.C. App. 135
 
 , 140,
 
 530 S.E.2d 576
 
 , 579 (2000). But the trial court found this relationship had become stronger and was beneficial to the children: "
 
 Since the entry of the prior Order
 
 Thomas McKiernan has developed a strong bond with the children and is very involved in their lives during periods of visitation provided to" Mother. (Emphasis added.) The trial court's finding of the stepfather's development of a strong relationship with the children and his positive involvement in the children's lives is a change of circumstances that affects the children's welfare.
 

 3. Difficult Communication
 

 Father next argues that the parties had difficulty with communication prior to entry of the 2012 order so no substantial change of circumstances has occurred, and even if their communications had changed,
 
 *37
 
 this did not affect the children nor was there any evidence it did. We addressed a similar argument regarding the parents' difficulties in communication in
 
 Laprade v. Barry
 
 :
 

 It is beyond obvious that a parent's unwillingness or inability to communicate in a reasonable manner with the other parent regarding their child's needs may adversely affect a child, and the trial court's findings abundantly demonstrate these communication problems
 
 and
 
 the child's resulting anxiety from her father's actions. While father is correct that this case overall demonstrates a woeful refusal or inability of both parties to communicate with one another as reasonable adults on many occasions, we can find no reason to question the trial court's finding that these communication problems are
 
 presently
 
 having a negative impact on Reagan's welfare that constitutes a change of circumstances. In fact, it is foreseeable the communication problems are likely to affect Reagan more and more as she becomes older and is engaged in more activities which require parental cooperation and as she is more aware of the conflict between her parents. Therefore, we conclude that the binding findings of fact support the conclusion that there was a substantial change of circumstances justifying modification of custody.
 

 Laprade v. Barry
 
 , --- N.C. App. ----, ----,
 
 800 S.E.2d 112
 
 , 117 (2017) (citation omitted).
 

 Here, the trial court specifically noted the changes in communication and cooperation since the 2012 order. Although the parties had always had trouble communicating, Father had become even less willing to cooperate with Mother. Father had refused to allow Mother to get information regarding the children's education, including their report cards; he refused to allow Mother to attend school activities and parent teacher conferences; he failed to send the children's homework with them when they visited Mother; and refused to allow Mother to have the children's medical information. At the time of the prior order, the older child was just beginning school and the younger was only two. At the time the trial court entered the order on appeal modifying custody, the children were ages ten and seven, and both were in school and extracurricular activities. Just as in
 
 Laprade
 
 , "[i]t is beyond obvious" how Father's unwillingness to communicate with
 
 *573
 
 Mother regarding the children's school and medical needs would have a negative effect on the children that becomes more substantial as the children grow older.
 
 *38
 

 Id.
 

 at ----,
 
 800 S.E.2d at 117
 
 . In addition, the trial court's order includes findings about how Father's refusal to share information, particularly about school, is detrimental the children.
 

 4. Father's Capabilities
 

 Father also contends that he has always needed assistance from his parents and there has not been a change in his capabilities since entry of the 2012 order. The trial court also addressed the detrimental effects of Father's inability to read and to assist the children with school work. Despite his lack of ability to help the children, he still he refused to allow Mother to help by sending homework with them and allowing Mother to be involved in parent teacher conferences. As just noted in
 
 Laprade
 
 , above, as children become older, they have more involvement with school activities, parent-teacher meetings become more detailed, and homework becomes more complex. As the children have advanced in school, Father's limited capabilities have had more of an impact on the children's lives and this will likely continue as the children get older.
 
 See
 

 id.
 

 at ----,
 
 800 S.E.2d at 117
 
 . Father's argument fails to take into account the fact that the children themselves are always changing and their needs change, although his abilities have remained the same. His inability to read and to assist the children with schoolwork affects the children more as they progress through their own education and must do more challenging work.
 

 5. Conclusion
 

 The trial court's findings of fact regarding Mother's years of sobriety, her remarriage along with the stepfather's positive relationship with the children, Father's and Mother's worsening communications, and Father's limited capabilities, while the children's needs are becoming more complex, support its conclusion there have been substantial changes of circumstances since the prior order that affect the welfare of the minor children.
 
 See generally
 

 Shipman
 
 ,
 
 357 N.C. at 473-75
 
 ,
 
 586 S.E.2d at 253-54
 
 .
 

 C. Best Interests
 

 Last, Father contends that even assuming there was a substantial change of circumstances affecting the welfare of the children, it was not in their best interest to change custody as the "best interests were that they remain with their Father in the paternal Grandparents' home." (Original in all caps.) Again, "a trial court's principal objective is to measure whether a change in custody will serve to promote the child's best interests."
 
 Id
 
 . at 474,
 
 586 S.E.2d at 253
 
 .
 

 *39
 
 Once the trial court makes the threshold determination that a substantial change has occurred, the court then must consider whether a change in custody would be in the best interests of the child. As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion.
 

 Metz v. Metz
 
 ,
 
 138 N.C. App. 538
 
 , 540-41,
 
 530 S.E.2d 79
 
 , 81 (2000) (citations omitted).
 

 Here, the trial court found that due to Mother's maintenance of her sobriety, ability to maintain a stable job and provide a proper home, the children's close relationship to their stepfather, Father's increasingly "autocratic" control seeking to shut Mother out of the children's lives, and Father's continued need to rely on his parents to care for his children, it was in the best interests of the children to primarily reside with their Mother. We discern no abuse of discretion with this determination.
 

 III. Conclusion
 

 Because the trial court's findings of fact support its conclusion there was a substantial change of circumstances affecting the welfare of the minor children since the prior order and because the trial court did not abuse its discretion in concluding it was in the best interests of the children to primarily reside with their Mother, we affirm.
 

 AFFIRMED.
 

 Judges DILLON and INMAN concur.
 

 [1]
 

 A pseudonym is used to protect the privacy of the minors involved.
 

 [2]
 

 Grandparents have filed a petition for writ of certiorari with this Court because their notice of appeal was not timely; however, Father provided timely notice of appeal, and he and Grandparents have filed one joint brief. Because we will necessarily consider Grandparent's arguments based upon Father's timely appeal, we need not grant their petition for writ of certiorari and thus dismiss it.