IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-445

Filed 6 August 2025

Wake County, No. 19CVD012400-910

BRYAN SINNETT, Plaintiff,

v.

LANDIS SINNETT, Defendant.

Appeal by defendant from order entered 14 September 2023 by Judge Julie L. Bell in District Court, Wake County. Heard in the Court of Appeals 29 January 2025.

*Smith Debnam Narron Drake Saintsing & Myers, L.L.P., by Alicia Jurney, for plaintiff-appellee.*

*Connell & Gelb PLLC, by Michelle D. Connell, for defendant-appellant.*

STROUD, Judge.

Defendant appeals the trial court's order modifying child custody as to her two minor children. Defendant argues the trial court erred by infringing on her constitutionally protected right to freedom of religion in both the inquiry into this issue at trial and in the order on appeal, by making insufficient findings to conclude there was a substantial change of circumstances, and by using the incorrect standard as to modification of custody. Plaintiff's motion to modify custody alleged several substantial changes of circumstances, including Defendant's alleged conversion from Christian to Buddhist and her discussion of her new beliefs with the children, without

first consulting Plaintiff as required under the existing custody order. Because Defendant raised no objections at trial regarding questions about her religious beliefs or practices and made no argument at trial of impairment of her constitutional rights, she has waived any argument on appeal regarding infringement upon her constitutional rights based on questioning at trial. The trial court's order showed no preference for a particular religion as the basis for modification of custody and the modification of the legal custody provisions increased Defendant's control over making decisions regarding the children if she and Plaintiff cannot agree. The trial court also made sufficient findings as to substantial changes in circumstances affecting the minor children to support its conclusion of law regarding modification. We affirm the trial court's order.

## I.  Background

Plaintiff ("Father") and Defendant ("Mother") were married in July 2008. The parties had two children during their marriage: B.S.S., born in 2012, and F.W.S., born in 2015.[1] The parties separated in 2018 and are now divorced. Father "is a real estate broker" and during the marriage "he had to work weekends showing houses." On 11 October 2019, the parties entered into a consent order for permanent child custody and child support which "provide[d] that [Father] and [Mother] have joint legal custody to make all major decisions concerning the general health, welfare,

---

[1] Pseudonyms are used to protect the identities of the minor children.

education, development, and extracurricular activities" for the children and "joint physical custody of the minor children as they agree but if they cannot agree every other weekend [Father] will have from Friday afterschool to Monday before school and every Tuesday after school to Wednesday at school." The consent order included extensive detailed provisions regarding the parties' "joint responsibility and authority with respect to all major decisions affecting the minor children's health, education and welfare." They were required to "notify and discuss all major decisions affecting the minor children with the other party" and to "reach a mutual agreement prior to making any change or decision, except in emergency situations if the other party cannot be reached in time." The consent order specifically required the parties to "consult together" and to "adopt, insofar as possible, a harmonious policy regarding the children's upbringing."

The consent order did not include detailed provisions as to the children's religious practice or training, but as to "religious activities" of the children, both parties were allowed to "attend and participate," to "keep one another informed" about events and provide information about the children's activities. If the parties were unable to agree on something "that requires mutual consent," they were to "follow the recommendations of the children's providers if the children would suffer harm without a timely decision. For matters in which the children will not suffer harm" without a timely decision, the "the children shall be maintained in the existing situation pending further order of the court." Thus, the joint legal custody provisions

of the consent order did not grant either parent exclusive decision-making authority in the event of an impasse as to "major decisions" regarding the children's "general health, welfare, education, development, and extracurricular activities[.]"

After entry of the consent order, Father remarried to Avera. Also after the consent order, Mother began a committed relationship with Gui. On 8 December 2022, Father filed a motion to modify custody alleging "since the entry of [the 2019 consent order] there have occurred substantial and material changes in circumstances affecting the best interest and general welfare of the minor children" which included nineteen alleged changes. These alleged changes included Father's remarriage to Avera; Avera's positive relationship with the children; Mother's switch from Christianity to Buddhism; Father's belief that Mother's switch to Buddhism "creates confusion for the children[,]" outlining questions from the children to Father about Buddhism; Mother's change "to a vegan diet" which "greatly impacts what the minor children are served in [Mother's] home[;]" Father's concern that the children were not getting sufficient nutrition in their diet; conversations between Mother and the children about the treatment of animals, which Father contends are inappropriate for the children's age; the children's change since the prior order to a private school with a different schedule; and changes to Father's work schedule increasing his ability to spend time with his children.

Father's motion to modify custody was heard on 28-30 August 2023. The trial court entered the "Order Modifying Custody" ("Modification Order") 14 September

2023. The trial court made sixty-two detailed findings of fact in the Modification Order. After making detailed findings on all these matters, finding of fact 56 summarizes several changes in circumstances affecting the children's best interests:

> Since the entry of the prior Order, there have been substantial changes that have occurred that affect the best interest of the minor children specifically: [Father] is remarried, to Avera, [Father] has a coworker that is available to do showings on the weekends so he has more time to devote to the children, [Mother] allowed the minor children to be exposed to reincarnation and Buddhism concepts through a movie she allowed them to watch and she shared a book regarding these concepts and now encourages them to say "gratitudes" which is a Buddhist concept rather than prayers. This has exposed the minor children to a different religion than the parties previously practiced in their marital household. [Mother] no longer cooks meat in her house and has discussed adult concepts about cows with the minor children.

Due to the substantial change of circumstances found by the trial court, it modified physical custody to an alternating week schedule. Father and Mother retained joint legal custody, but the trial court changed some of the joint decision-making provisions of the consent order. In particular, the Modification Order decreed that

> [a]ll major decisions regarding the minor children's schooling, extracurricular activities, medical care etc. shall be discussed between [Father] and [Mother] and decided together. They shall strive to agree upon the same. If they cannot agree and it is a medical decision where the children would suffer harm without a timely decision than the parties shall follow the recommendations of the treating medical provider. If the minor children will not suffer harm, the parties can seek Court intervention regarding

- 5 -

the same. If it is a decision, such as education or other non-medical decision, than (sic) after reasoning together if they cannot agree, [Mother] shall have final decision-making authority.

On 25 September 2023, Father filed Rule 59 and Rule 60 motions. Mother filed written notice of appeal of the Modification Order on 11 October 2023. The trial court never ruled on the Rule 59 and 60 motions and they were withdrawn by Father on 29 May 2024.[2]

## II.     Petition for Writ of Certiorari

We first address Mother's petition for writ of certiorari ("PWC") filed with this Court. Mother filed her PWC with this Court, "if necessary," since "[t]here was no decision by the [trial] court or any orders entered ruling on either motion." After the Modification Order was entered, Father filed Rule 59 and 60 motions on 25 September 2023. Mother filed written notice of appeal on 11 October 2023, after Father filed the motions. In the "Statement of Grounds for Appellate Relief" section of her brief, Mother argues her written notice of appeal was timely and proper since Father's Rule 59 motion was improper and did not toll her time to file a notice of appeal.[3] Essentially, Mother argues since the Rule 59 motion was not a proper Rule 59 motion which would toll the time for filing notice of appeal, had she waited to file

---

[2] While our record does not contain the Notice of Withdrawal, it is included as an appendix in Mother's initial brief and petition for writ of certiorari.

[3] We will only discuss Father's Rule 59 motion in this section as "[m]otions entered pursuant to Rule 60 do not toll the time for filing a notice of appeal." *Lovallo v. Sabato*, 216 N.C. App. 281, 283, 715 S.E.2d 909, 911 (2011) (citation omitted).

notice of appeal it would have been untimely. Mother argues her notice of appeal was timely since the Rule 59 motion was improper but she filed the PWC in case the Rule 59 motion was considered proper. Father does not challenge this Court's jurisdiction in his responsive brief, nor did he file a response with this Court to Mother's PWC.

Under North Carolina Rule of Appellate Procedure 3(c)(3):

> (c) Time for Taking Appeal. In civil actions and special proceedings, a party must file and serve a notice of appeal:
>
> . . . .
>
>> (3) if a timely motion is made by any party for relief under Rules 50(b), 52(b) or 59 of the Rules of Civil Procedure, *the thirty-day period for taking appeal is tolled as to all parties until entry of an order disposing of the motion* and then runs as to each party from the date of entry of the order or its untimely service upon the party, as provided in subdivisions (1) and (2) of this subsection (c).

N. C. R. App. P. 3(c)(3) (emphasis added). However, whether Father's Rule 59 motion was proper or not, he withdrew the motion and thus there was never any need for "entry of an order disposing of the motion[.]" *Id.*

In *Lovallo v. Sabato*, the defendant filed Rule 52, 59, and 60 motions on 31 March 2010 and subsequently filed a notice of appeal on 17 August 2010. 216 N.C. App. 281, 282, 715 S.E.2d 909, 910 (2011). In determining whether the notice of appeal was timely, we noted the

> defendant made a timely motion to the trial court under Rules 52(b) and 59 of the Rules of Civil Procedure, and therefore, the provision of Appellate Rule 3 allowing the

tolling of the time for taking appeal would have applied in this case. However, *Rule 3(c)(3) clearly contemplates a ruling by the trial court on such motions in order for the tolling period to apply.*

*Id*. at 283, 715 S.E.2d at 911 (emphasis added). But the defendant "filed her notice of appeal before the trial court ruled on her pending motions" and

> to timely perfect her appeal from the trial court's 24 March 2010 order, [the] defendant's notice of appeal should have been filed, at the very latest, within 30 days from the date of 31 March 2010, when [the] defendant was obviously served with a copy of the trial court's order.

*Id*. at 284, 715 S.E.2d at 911. This Court noted the defendant could have waited for the trial court to rule on her motions before appealing both the underlying order and the order on her motions:

> On the other hand, [the] defendant could have allowed the trial court to rule on her pending Rule 52(b) and 59 motions, thereby affording her the opportunity to appeal both the trial court's rulings on her motions, as well as the underlying 24 March 2010 judgment, so long as she filed her notice of appeal within the time limits prescribed by Rule 3(c)(3) following entry of the trial court's rulings on those motions. However, [the] defendant is unable to utilize the tolling provisions in this case, as the trial court never ruled on her Rule 52(b) or Rule 59 motions.

*Id*. at 284, 715 S.E.2d at 911-12. As the defendant did not either file a notice of appeal within 30 days of the order or allow the trial court to rule on her motions and file her notice of appeal after the trial court's order on the motions, this Court was without jurisdiction to hear the appeal. *See id*. We also noted

> upon filing a notice of appeal, [the] defendant

improvidently set in motion the appellate review process. Although filing the notice of appeal did not divest the trial court of jurisdiction to hear and rule on [the] defendant's Rule 52(b) motion, such action did divest the trial court of jurisdiction to hear and rule on her Rule 59 and 60 motions.

*Id.* at 285, 715 S.E.2d at 912 (citations omitted). However, this case differs from *Lovallo* since Father filed Rule 59 and 60 motions, and Mother filed notice of appeal based on her belief that Father's motions would not actually toll the time for appeal; in *Lovallo* the defendant filed both the motions and the notice of appeal. *See id.* at 282, 715 S.E.2d at 910.

This Court also addressed the proper time for filing notice of appeal after Rule 59 and 60 motions were filed in *Reeder v. Carter*, 226 N.C. App. 270, 273, 740 S.E.2d 913, 916 (2013). In *Reeder*, the plaintiff filed Rule 52, 59, and 60 motions on 2 March 2012 and then filed "timely written notice of appeal" on 20 March 2012 while the Rule 52, 59, and 60 motions were pending. *Id.* We cited *Lovallo* and concluded

> [i]n *Lovallo*, we held the defendant did not file a timely appeal. We further determined [the] defendant could have pursued two alternatives for timely appeal: (i) the defendant could have appealed the final order within thirty days of its filing; or (ii) the defendant could have allowed the trial court to decide the Rule 52(b) and 59 motions and then appeal both the final order *and* the motions rulings. In the instant case, [the p]laintiff pursued the first route offered in *Lovallo* by timely appealing the 24 February 2012 final order within thirty days of its filing.

*Id.* at 273-74, 740 S.E.2d at 917 (emphasis in original) (citations and footnote omitted).

This case is again distinguishable from *Reeder* as Father first filed his Rule 59 and 60 motions and then Mother filed notice of appeal within thirty days after entry of the Modification Order instead of the same party filing the motions and the notice of appeal. But the basic reasoning in *Lovallo* and *Reeder* still applies. Although Father filed the Rule 59 and 60 motions, the trial court never entered "an order disposing of the motion[s]" because Father withdrew them. N.C. R. App. P. 3(c)(3). Had Mother waited for the trial court to rule on the motions and Father instead withdrew them without a ruling after 30 days from the entry of the Modification Order and this Court considered Father's Rule 59 motion not to toll the time for appeal, Mother may have lost her right to appeal. In any event, Mother was placed in a situation where she could not be sure if her notice of appeal would be considered timely. If that happened, a PWC would have been her only avenue for appellate review. Instead, Mother filed timely notice of appeal within 30 days from the Modification Order based on her belief the Rule 59 motion would not toll the time for appeal. We need not discuss whether Father's Rule 59 motion was actually a proper motion that would have tolled time for appeal since he ultimately withdrew the motion without obtaining a ruling. Thus, we conclude Mother filed timely notice of appeal. We deny her PWC as it is unnecessary since this Court has jurisdiction over the appeal under North Carolina General Statute Section 7A-27(b).

### III. Analysis

Mother argues (1) the trial court violated her constitutional right to freedom of

religion; (2) the trial court's findings of fact made it "impossible for this reviewing court to determine whether or not there has been a substantial change of circumstance since the original order[;]" (3) there has not been a substantial change of circumstances; and (4) the trial court "failed to use the correct standard of review to modify permanent child custody." For the following reasons, we disagree and affirm the Modification Order.

## A. Standard of Review

When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Our trial courts are vested with broad discretion in child custody matters. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges[.] Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary.

In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law. With regard to the trial court's conclusions of law, our case law indicates that the trial court must determine whether there has been a substantial change in circumstances and whether that change affected the minor child. Upon concluding that such a change

affects the child's welfare, the trial court must then decide whether a modification of custody was in the child's best interests. If we determine that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of the minor child and that modification was in the child's best interests, we will defer to the trial court's judgment and not disturb its decision to modify an existing custody agreement.

*Shipman v. Shipman*, 357 N.C. 471, 474-75, 586 S.E.2d 250, 253-54 (2003) (citations and quotation marks omitted). We review the trial court's conclusion that a substantial change of circumstances has occurred *de novo*. *See In re K.J.M.*, 288 N.C. App. 332, 339, 886 S.E.2d 589, 595 (2023) ("[W]e review the trial court's conclusions of law *de novo*." (citation and brackets omitted)).

We first note Father contends Mother challenged none of the trial court's findings of fact as unsupported by competent evidence so the findings are binding on appeal. Mother argues in her reply brief that "Father inaccurately alleges that Mother did not challenge 36 findings of fact; to the contrary, Mother challenged 26 of those 36 findings[,]" citing to the record but not her initial brief. The "Proposed Issues on Appeal" part of our record contains a proposed issue challenging certain findings of fact, but Mother never directly addressed these findings as unsupported in her initial brief. And in her reply brief, shortly after arguing she did, in fact, challenge 26 findings of fact, Mother states she "does not argue that the facts were unsupported by the evidence, she argues that the facts do not support modification of custody." But these are two separate arguments with different standards of review. *See Shipman*,

357 N.C. at 474, 586 S.E.2d at 253 ("[T]he appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence."); *see also In re K.J.M.*, 288 N.C. App. at 339, 886 S.E.2d at 595 (reviewing conclusions of law *de novo*). Whether the trial court's findings of fact are supported by the evidence is a different argument than whether the findings of fact support the conclusions of law, and Mother's argument addresses the conclusions of law.

Since Mother did not challenge the findings as unsupported, they are binding on appeal. *See Fecteau v. Spierer*, 277 N.C. App. 1, 9, 858 S.E.2d 123, 129 (2021) ("Where no exception is taken to a finding of fact made by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." (citation and brackets omitted)). And even considering the "Proposed Issues on Appeal" as to whether the trial court erred in specific findings, Mother has abandoned any argument those findings are unsupported by the evidence since this was not argued in Mother's initial brief. *See* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned."). Therefore, we need not review whether the findings are supported by substantial evidence and will only review whether "the trial court's factual findings support its conclusions of law." *Shipman*, 357 N.C. at 475, 586 S.E.2d at 254.

**B. Mother's Constitutional Right to Freedom of Religion**

Mother's first substantive argument is

> [t]he trial court violated Mother's Constitutional right to

> freedom of religion when it modified child custody because Mother allowed the children to watch the Disney movie Soul, used stories in a children's book about Buddhism to answer questions about reincarnation, and encouraged the children to be thankful by saying "gratitudes."

Under the First Amendment to the United States Constitution, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. The North Carolina Constitution has similar protections for religion. *See* N.C. Const. art. I, § 13. "Our courts have stated that although a court may consider a child's spiritual welfare as part of the best interest determination, a court may not base its findings on its preference for any religion or particular faith." *Petersen v. Rogers*, 111 N.C. App. 712, 718, 433 S.E.2d 770, 774 (1993) (citations omitted), *rev'd on other grounds*, 337 N.C. 397, 445 S.E.2d 901 (1994).

We first note that Mother's argument overstates the extent of the trial court's reliance on the facts about the movie, the book, and saying "gratitudes." The trial court did not modify custody "because Mother allowed the children to watch the Disney movie Soul, used stories in a children's book about Buddhism to answer questions about reincarnation, and encouraged the children to be thankful by saying gratitudes" as Mother contends. In the trial court's findings addressing religion or religious practices, the trial court focused on the effect of Mother's actions on the children's health or welfare. For example, the trial court found that Mother's discussions about cows and animals were not age-appropriate for children, but the

trial court did not find these topics were inappropriate based on any religious beliefs. The trial court also found that the discussions about cows and animals were causing the children to give Father "some push back about eating meat at his house at times." And most important, despite these findings of fact, the trial court did not reduce Mother's decision-making authority as to the children's religious training or practices in any way. Although the parties still share joint legal custody and must consult with one another regarding major decisions about the children, the Modification Order grants Mother "final decision-making authority" if the parties cannot agree on issues such as "education or other non-medical decision[s]."

The trial court's findings of fact addressed many changes in circumstances alleged by Father in support of his motion to modify custody, including but certainly not limited to questions regarding the alleged change in Mother's religious practices and the effect of this change on the children. The trial court findings generally showed that both Avera and Gui have positive relationships with the children. Initially, "[t]he parties were able to talk and text freely about the minor children without tension" but

> when Avera started posting about the children as being hers and about her being a mom, when she made several decisions at the minor children's school, including helping [B.S.S.] pick out her electives, and offered the thought that [Mother] should let the minor child rest after he had been sick, things soured between [Mother] and Avera.

This resulted in "a lot of tension between [Mother] and Avera and resulting tension

between [Mother] and [Father]."

During the COVID-19 pandemic, the children began attending a private school where Avera is a teacher. Since Avera is an employee at the private school, the children "are able to attend [the school] for half the tuition and there is no reenrollment fee assessed each year." "Neither [Father] nor [Mother] would be able to afford [the school] without the discount afforded by Avera working there." The children are "thriving academically" at the school.

The trial court found that after Mother met Gui she began teaching the children on many aspects of Buddhism. The trial court found Mother began allowing the children to "watch a movie that featured reincarnation and bought a book and discussed and or read to the minor children about reincarnation and Buddhism." Mother also "has the children say 'gratitudes' rather than prayers which is a practice/concept that is a part of Buddhism" and had "talked with the minor children about the fact that cows have to be pregnant to give milk, and other topics concerning animals that are more appropriate adult topics rather than with children." "As a result of the conversations, the minor children are giving [Father] some push back about eating meat at his house at times." While Mother "does not cook meat in her household," she allows the children to eat meat "if they request it." Mother "will buy meat already cooked and she will reheat it if they don't finish everything bought for another meal later."

Although Father alleged Mother had converted to Buddhism since entry of the

prior order, the trial court did not so find. Mother testified that she was Christian; in closing, her counsel argued that Father's suggestions that she was not Christian were "hurtful" and "offensive." And the trial court found Mother's testimony about her faith to be credible since the trial court found that Mother is a Christian, and not Buddhist. Mother did not challenge this finding of fact. Thus, to the extent Mother contends that the trial court's order infringed on Mother's right to practice a preferred religion of Buddhism, this argument overlooks the trial court's findings of fact and Mother's joint legal custody with final decision-making authority if she and Father cannot agree. Instead, Mother's argument seems to focus more on the inquiry into her religious beliefs and practices. She argues that "the trial court allowed extensive religious examinations which violated Mother's fundamental rights. The transcript has at least 42 pages of testimony addressing the religious beliefs and practices of Mother (and her partner, Gui). Even the trial judge herself directly questioned Mother about her religious beliefs." Mother then notes several instances of questions from Father's counsel or the trial court regarding her religious beliefs or practices.

As to Mother's argument regarding "extensive religious examinations which violated her fundamental rights[,]" we first note that Mother did not object to *any* questions at trial based on her constitutionally protected right to freedom of religion. At trial, she never even mentioned any constitutional objection or concern regarding the extent of inquiry as to her religious beliefs or practices, nor did she argue that the trial court should limit its consideration of the allegations of Father's motion to

modify custody or exclude inquiry into the parties' religious beliefs and practices. Therefore, Mother has waived her right to argue on appeal about questions asked at trial since she did not object to these questions. *See Venters v. Albritton*, 184 N.C. App. 230, 240, 645 S.E.2d 839, 846 (2007) ("[I]t is the well-established rule that the admission of evidence without objection waives any prior or subsequent objection to the admission of evidence of a similar character." (citations omitted)).

Mother's argument also addresses questions by the trial court, as she contends the trial court's questions about her religious beliefs or practices infringed upon her constitutional rights. Again, Mother did not object to the trial court's questions, but even beyond the questions asked, Mother raised no argument to the trial court about impairment of her constitutional rights, so she is not permitted to argue this issue "for the first time on appeal." *See USA Trouser, S.A. de C.V. v. Williams*, 258 N.C. App. 192, 200-01, 812 S.E.2d 373, 379 (2018) ("It is well settled in this jurisdiction that a party cannot argue for the first time on appeal a new ground that he did not present to the trial court." (citation, quotation marks, brackets, and ellipsis omitted)).

As Mother did not raise any argument or objection to the trial court that the inquiry into her religious beliefs infringed upon her constitutional right to freedom of religion, she has waived appellate review of this issue. *See id*. Our Supreme Court has recently reiterated the rule that an appellant cannot argue an issue on appeal that was not raised before the trial court, even if the issue involves "a constitutional protection":

But the existence of a constitutional protection does not obviate the requirement that arguments rooted in the Constitution be preserved for appellate review. Our appellate courts have consistently found that unpreserved constitutional arguments are waived on appeal. *See State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001) ("Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal."); *State v. Fernandez*, 346 N.C. 1, 18, 484 S.E.2d 350, 361 (1997) (holding that [the] defendant waived confrontation and due process arguments by not first raising the issues in the trial court); *Dep't of Transp. v. Haywood Oil Co.*, 195 N.C. App. 668, 677-78, 673 S.E.2d 712, 718 (2009) (holding that arguments pertaining to Fourteenth Amendment to the United States Constitution and law of the land clause of the North Carolina Constitution, although constitutional issues, were not raised before the trial court and therefore not properly preserved for appeal); *State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39 (2002) ("It is well settled that an error, even one of constitutional magnitude, that is not brought to the trial court's attention is waived and will not be considered on appeal.").

*In re J.N.*, 381 N.C. 131, 133, 871 S.E.2d 495, 497 (2022) (brackets omitted).

Although we cannot consider Mother's argument regarding the extent of the "inquiry" into her religious beliefs and practices on appeal due to her failure to raise any constitutional objection at trial, we can consider her argument that the Modification Order demonstrated a preference for one religion over another and modified custody based on this unconstitutional preference. While Mother contends that "the trial court's blatant preference for one religion resulted in a modification of custody[,]" the findings of fact do not support Mother's characterization of the trial court's comments at the trial and the Modification Order does not demonstrate any

preference for either religion. Instead, the trial court found Mother was Christian, the religion Mother argues the trial court favored, and Mother still has joint legal custody with Father. In fact, the trial court changed the joint legal custody provisions of the consent order to give Mother more authority over decisions for the children, not less, as she has final decision-making authority in the event of an impasse. The trial court's findings of fact and conclusions of law do not support Mother's argument that the trial court modified the physical custodial schedule or the terms of the joint legal custody based on any preference or prejudice to either religion. The trial court's findings focused on the children's welfare, including Mother's failure to consult with Father before presenting the movie and book addressing issues which may conflict with their existing religious training; discussions which were not appropriate for the children at their ages; the children's subsequent confusion about this information; and the effect this had on the children's willingness to eat meat although they had routinely eaten meat in the past. This argument is overruled.

## C. Findings of Fact as to Substantial Change of Circumstances

Next, Mother argues

> [t]he trial court's order must be reversed because it failed to make findings of fact to support the circumstances existing at the time of the original child custody consent order thereby making it impossible for this reviewing court to determine whether or not there has been a substantial change of circumstance since the original order.

Mother contends the trial court did not "make adequate findings of the circumstances

existing at the time the original order was entered, therefore, this Court cannot compare the prior existing circumstances with the current existing circumstances to determine whether a substantial change of circumstances has occurred." We disagree.

> Modification of a custody decree must be supported by findings of fact based on competent evidence that there has been a substantial change of circumstances affecting the welfare of the child. If the evidence supports the findings of fact by the trial court and those findings of fact form a valid basis for the conclusions of law, the judgment entered will not be disturbed on appeal. While it is well established that the trial judge is in the best position to observe the parties and witnesses and to hear the evidence,

> it is not sufficient that there may be evidence in the record sufficient to support findings that could have been made. The trial court is required to make specific findings of fact with respect to factors listed in the statute. Such findings are required in order for the appellate court to determine whether the trial court gave "due regard" to the factors listed.

*Benedict v. Coe*, 117 N.C. App. 369, 377, 451 S.E.2d 320, 324 (1994) (citations, brackets, and ellipses omitted), *disapproved on other grounds by Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998).

Plaintiff cites *Benedict* to assert the findings made by the trial court did not adequately discuss the substantial changes of circumstances since entry of the 2019 consent order. In *Benedict*, we noted

> [t]he record shows that no evidence was presented as to the circumstances of the parties on 16 December 1991, 6 January 1993, or 13 July 1993. Rather, all evidence

presented concerned the parties' and minor child's then current circumstances. Moreover, the 29 July 1993 Order contains no findings as to the existing circumstances on 16 December 1991, 10 November 1992, 6 January 1993 or 13 July 1993. It contains no findings of changed circumstances since these dates. It contains no Conclusion of Law that a substantial change of circumstances affecting the welfare of the child has occurred.

*Id*. at 377, 451 S.E.2d at 325. We vacated and remanded the modification order as

[t]he trial court's order [wa]s deficient in that it contain[ed] insufficient findings and no conclusion of law that "a substantial change of circumstances affecting the welfare of the child has occurred." Without such finding, a modification based solely on the ground that the defendant mother is over-protective is improper. In this case, additional findings of fact and conclusions of law were in order.

*Id*. at 378, 451 S.E.2d at 325.

This case is quite different from *Benedict*. First, the trial court clearly identified in finding of fact 27 that "[t]he parties are operating under a [consent order] that was entered on October 11, 2019." That consent order included a few findings of fact and a detailed physical and legal custody schedule as to the minor children. As to the changes identified by the trial court in the Modification Order, the trial court found that since the prior order, Father had remarried and Mother was in a relationship with Gui. The trial court made findings about how the circumstances had changed due to their new relationships, addressing Father's new marriage to Avera and the positive impacts of that relationship on the minor children and Mother's new relationship with Gui, which has been overall positive for the children.

The findings identify the public school the children were to attend before 2020, and the parties agreed to send the children to the private school "during the pandemic when public schools were closed to in-person learning due to Covid." The trial court made findings about changes in that the children were able to attend private school due to Avera's employment at the school and that the children were benefiting from this educational opportunity.

The trial court made findings about the parties' religious training of the children as of the time of the prior order. The trial court found that during the marriage, the parties "raised the minor children in a 'Christian household'" and the older child was baptized, although the parties were not members of a particular church and "did not attend church every Sunday." In 2019, the children routinely ate meat. The trial court made findings regarding the effects Mother's discussion of reincarnation and Buddhist principles had on the children's diet and confusion as to their beliefs. In 2019, Father had to work on weekends, limiting his time to care for the children on weekends. The trial court found a change of circumstances as Father is no longer required to work on weekends due to adding a new employee at his job. The trial court also made findings about friction between Avera and Mother which did not exist in 2019 or even when Father and Avera were first married. Specifically, just after Father's remarriage, "the parties all got along wonderfully well[,]" but later "tension between [Mother] and Avera" and Mother and Father had developed. Then, importantly, the trial court unequivocally found these circumstances were

"substantial changes that have occurred that affect the best interest of the minor children" and again summarized the circumstances in finding of fact 56. Thus, unlike *Benedict*, where "[t]he trial court's order [wa]s deficient in that it contain[ed] insufficient findings and no conclusion of law that 'a substantial change of circumstances affecting the welfare of the child ha[d] occurred[,]'" *id*., the trial court made sufficient findings and a clear conclusion there was a substantial change of circumstances. And we note "[t]he trial court did not need to cite to specific evidence in its findings or to make a finding of fact on each and every piece of evidence presented" for the Modification Order to be valid. *Deanes v. Deanes*, 294 N.C. App. 29, 36, 901 S.E.2d 880, 886 (2024) (citation omitted). This argument is overruled.

**D. Conclusion of Substantial Change of Circumstances**

Next, Mother asserts "[b]ecause there has been no substantial change of circumstances affecting the welfare of the children since entry of the original order, the trial court's order must be reversed." As the trial court found several changes and its findings support the conclusion of law, we disagree.

> It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a substantial change of circumstances affecting the welfare of the child warrants a change in custody. The party seeking to modify a custody order need not allege that the change in circumstances had an adverse effect on the child. While allegations concerning adversity are acceptable factors for the trial court to consider and will support modification, a showing of a change in circumstances that is, or is likely to be, beneficial

to the child may also warrant a change in custody.

*Shell v. Shell*, 261 N.C. App. 30, 33, 819 S.E.2d 566, 570 (2018).

While "remarriage, in and of itself, is not a sufficient change of circumstance affecting the welfare of the child to justify modification of the child custody order without a finding of fact indicating the effect of the remarriage of the children[,]" the trial court made several findings explaining the effect of Father's remarriage and Mother's new relationship on the children. *Id*. at 36, 819 S.E.2d at 572. Not only did the trial court find Father remarried, the trial court found that the relationship between Avera and the children was "a positive relationship" and she was "determined to have a positive relationship with the minor children[.]" The trial court found "having the love and support of multiple people besides their parents is a positive situation for the minor children." Mother addresses the trial court's findings as to Father's remarriage but merely states the finding Father remarried is insufficient, citing the same caselaw we cited above. But, as explained above, the trial court went further than merely stating Father was remarried; the trial court found the new relationship was a positive change for the children. These findings are similar to the findings in *Shell*, where the father made a similar argument as Mother is making here, and we concluded

> the trial court found this relationship had become stronger and was beneficial to the children: "Since the entry of the prior Order Thomas McKiernan has developed a strong bond with the children and is very involved in their lives during periods of visitation provided to" [the m]other. . . .

> The trial court's finding of the stepfather's development of a strong relationship with the children and his positive involvement in the children's lives is a change of circumstances that affects the children's welfare.

*Id*. (emphasis omitted). Father's remarriage and the positive relationship between Avera and the children support the trial court's conclusion that there has been "a change of circumstances that affects the children's welfare." *Id*. We also note the trial court made findings as to the positive relationship between the children and Gui, which could also support the conclusion of substantial change of circumstances.

The trial court also found that Father used to have to work weekends but he "now has a co-worker who can work weekends instead of him, when the minor children are with him." And while Mother contends "the finding states that the coworker is available. There is no finding that the coworker has actually been showing houses. Similarly, just because Father has more time to devote to the children does not mean he is actually spending time with the children." Mother's argument is more of an attack on Father's credibility, as he contended he would spend more time with the children on weekends due to the addition of a coworker to help him, but the trial court is the sole judge of credibility. *See In re K.W.*, 282 N.C. App. 283, 290, 871 S.E.2d 146, 152 (2022) ("A trial judge passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." (citations and quotation marks omitted)). The trial court found Father's evidence that the change in his workplace would give him more

availability on weekends and that he would spend more time with the children to be credible. Finding 56 specifically states Father "has a coworker that is available to do showings on the weekends *so he has more time to devote to the children*[.]" (Emphasis added.) Mother still argues that since Father previously had "custody of the children 'every other weekend from the conclusion of the school day on Friday until school resumes on the following Monday morning'" and since "Father is still working the same hours during the work week without a coworker to help[,]" Father does not have increased availability with the children. But the trial court did not find Father was only working every other weekend, so by not having to work every weekend, Father would have increased availability with the children on the weekends he had them. The trial court did not err in finding Father's more flexible work schedule to be a substantial change of circumstances affecting the best interests of the children. *See Mitchell v. Mitchell*, 199 N.C. App. 392, 408, 681 S.E.2d 520, 530 (2009) (concluding "[a]gain, there was substantial evidence in the transcript to support the trial court's findings as to the benefits to the children *from [the] plaintiff's flexible work schedule*" and this finding was properly considered in concluding there was a substantial change of circumstances (emphasis added)).

The trial court found the children are now able to attend private school based on Avera's employment at the school and the discount in tuition from her employment. Mother argues this finding does not show the public school was inferior, and "[t]here is no presumption that private schools are better than public schools or

if the parents have the ability to send their children to a private school, they *will* send their children to a private school." (Emphasis in original.) The trial court's findings did not compare the public and private schools and did not find the public school inferior. The findings show that the parties jointly decided to change to the private school during the Covid-19 pandemic and the extended closure of the public school. The trial court found this change in schools was beneficial for the children and it was a substantial change of circumstances since entry of the prior order. Father's remarriage is also related to the school issue, since the parties could not afford the private school without the tuition discount provided by Avera's employment.

Even with none of the findings regarding religion, the trial court's findings as to Father's remarriage and the relationship between his new wife and the children, Father's new work schedule which gives him greater flexibility to spend time with the children, and the children attending a new school since the family gets a discount due to Avera's employment, support the trial court's conclusion of a substantial change of circumstances affecting the welfare of the children. The trial court did not err in concluding there was a substantial change of circumstances affecting the welfare of the children.

## E. Trial Court's Standard to Modify Child Custody

Finally, Mother argues "[t]he trial court should be reversed because it failed to use the correct standard of review to modify permanent child custody." Mother contends the trial court erred because it stated in the Modification Order that "there

have been substantial changes that have occurred that affect the best interest of the minor children" and "[t]he above changes are substantial and have affected the minor children's best interest." Mother argues "the trial court melds the two prongs of 'affecting the welfare of the child' with 'it is in the best interest of the child to modify custody.'" We disagree.

As stated above in our discussion of the standard of review:

> With regard to the trial court's conclusions of law, our case law indicates that the trial court must determine whether there has been a substantial change in circumstances and whether that change affected the minor child. Upon concluding that such a change affects the child's welfare, the trial court must then decide whether a modification of custody was in the child's best interests.

*Shipman*, 357 N.C. at 475, 586 S.E.2d at 254. But while Mother quibbles with the wording of the trial court's findings and conclusions, it is clear the trial court used the correct standard, and the trial court was not required to use specific language. *See McConnell v. McConnell*, 151 N.C. App. 622, 629-30, 566 S.E.2d 801, 806 (2002) ("Though [the] plaintiff relies on *Brewer v. Brewer,* 139 N.C.App. 222, 533 S.E.2d 541 (2000) and *Browning v. Helff,* 136 N.C.App. 420, 524 S.E.2d 95 (2000), for the proposition that the court must make specific findings as to any effect a change in circumstance has on the welfare of the child, we do not read *Brewer* or *Browning* to require that the court use specific language in its order. Rather, the order must demonstrate that the court has considered the effect on the child's welfare, which was clearly done here.").

Here, the trial court first noted several substantial changes of circumstances that had occurred, outlining the specific changes in finding of fact 56. Even though the trial court initially did not use the exact wording these changes "affected the minor child[ren,]" the trial court noted throughout the Modification Order the effects these changes were having on the welfare of the children, such as Father's remarriage and the relationship Avera has with the children, the children's ability to go to private school due to Avera's job, the effect of Mother's dietary discussions and "adult conversations" she was having with the children, and Father's availability to care for the children on weekends. Considering all these changes together, the trial court concluded it was in the best interest of the children to modify the custody order, even though the trial court did not use the exact words that "a modification of custody was in the child[ren's] best interests." *Shipman*, 357 N.C. at 475, 586 S.E.2d at 254. The trial court sufficiently concluded changing the custodial schedule was in the children's best interests. The trial court used the proper standard and this argument is overruled.

## IV.  Conclusion

Mother waived any argument as to impairment of her constitutional right to freedom of religion by her failure to raise any objection or argument at trial as to the extent of the inquiry at the trial into the parties' religious beliefs or practices. In the Modification Order, the trial court properly considered Father's allegations regarding Mother's religious practices particularly as to the effect on the children, and the trial

court's order did not exhibit any preference or prejudice to any religion. Mother continues to have joint legal custody of the children and she has final decision-making authority in the event of an impasse between her and Father as to the children's religious practices, further indicating her right to freedom of religion was not infringed. The trial court also made sufficient findings to support its conclusion that there had been a substantial change of circumstances affecting the welfare of the children and that modification of custody is in the best interest of the children. We thus affirm the Modification Order.

AFFIRMED.

Chief Judge DILLON and Judge ZACHARY concur.